IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 12-0057-WS-C |
| ) | |
| GIUSEPPE BOTTIGLIERI SHIPPING ) | |
| COMPANY, S.P.A., ) | |
| ) | |
| Defendant. ) | |

**ORDER**

This matter comes before the Court on defendant's Motion to Dismiss Indictment for Insufficiency (doc. 82). The Motion has been briefed and is taken under submission without a hearing.

**I.   Background.**

On March 1, 2012, a grand jury convened in this District Court handed down an Indictment (doc. 43) against defendants, Giuseppe Bottiglieri Shipping Company S.P.A. ("GBS Co.") and Vito La Forgia ("La Forgia"). The Indictment identifies GBS Co. as an Italian corporation that owned and operated the M/V BOTTIGLIERI CHALLENGER (the "Vessel") at all material times, and alleges that La Forgia served as Chief Engineer aboard the Vessel at all material times. Over the span of four Counts, the Indictment charges GBS Co. and La Forgia with various offenses relating to the alleged failure to maintain, or intentional falsification of, the required Oil Record Book (the "ORB") on the Vessel, and obstruction of the Coast Guard's investigation of unlawful discharges of oily mixtures.

Count One of the Indictment charges a conspiracy, in violation of 18 U.S.C. § 371. Specifically, the Indictment alleges that, from December 19, 2011 through January 25, 2012, GBS Co., "acting through its agents and employees," and La Forgia (along with "others known and unknown to the Grand Jury") conspired (i) knowingly to fail to maintain the ORB, in which all operations involving transfer, discharge, and disposal of machinery space waste and bilge water must be fully recorded; (ii) falsely to record that the Oil Water Separator on the Vessel was used on occasions when it was not; and (iii) knowingly to conceal, cover up, and falsify the

fictitious and misleading ORB with the intent to obstruct the Coast Guard / Homeland Security investigation.  The objects of the conspiracy are alleged to be violations of, *inter alia*, 33 U.S.C. § 1908(a) (criminal penalties for violations of the MARPOL Protocol or accompanying regulations) and 18 U.S.C. § 1519 (obstruction of justice).  Count One does not identify any individual agents or employees of GBS Co. who were involved in the conspiracy, other than La Forgia, but instead alleges generically that GBS Co. participated in the conspiracy by "acting through its agents and employees."

Count One recites no fewer than 14 overt acts which GBS Co. and La Forgia are alleged to have committed in furtherance of the ORB falsification and obstruction conspiracy.  Examples of the listed overt acts include allegations that GBS Co., La Forgia, "and other members of the conspiracy" discharged machinery space bilge water directly overboard, without recording the discharge in the ORB, on December 19, 2011; December 27, 2011; December 31, 2011; January 9, 2012; January 12, 2012; and January 13, 2012.  Also recited among the overt acts is an incident in which GBS Co., La Forgia, "and other members of the conspiracy" allegedly used the Vessel's fire hose to fill the bilge holding tank with sea water on January 15, 2012, then pumped that water through the Vessel's pollution prevention equipment to make it appear that the Oil Water Separator had been used to treat machinery space waste, when in fact it had not.

Counts Two and Three charge obstruction of justice, in violation of 18 U.S.C. § 1519.  With respect to Count Two, GBS Co., once again "acting through its agents and employees," and La Forgia are alleged to have knowingly concealed, covered up, and falsified entries in the ORB, by failing to record overboard discharge and disposal of machinery space waste from December 19, 2011 through January 25, 2012.  And Count Three alleges that GBS Co., "by and through the acts of its agents and employees," and La Forgia knowingly altered, concealed and covered up a tangible object, by removing the so-called "magic pipe" used to bypass the Vessel's pollution prevention equipment and to dump bilge water directly overboard.  Finally, Count Four charges GBS, "acting through its agents," and La Forgia with knowing failure to maintain the ORB for the Vessel, in violation of 18 U.S.C. § 1908, inasmuch as the ORB "(1) failed to record overboard discharges of bilge water made without the use of a properly functioning Oil Water Separator and oil monitoring equipment; and (2) failed to record internal transfers of oily waste from machinery spaces to other areas of the ship." (Doc. 43, at 14.)

Defendant GBS Co. now challenges the sufficiency of the Indictment in two respects. First, GBS Co. argues that the Indictment is invalid because it "lacks specific information identifying which corporate actors apart from Defendant La Forgia allegedly performed what illegal act." (Doc. 82, at 4.) Although the Motion to Dismiss ascribes this defect to all four counts, GBS Co. focuses on the Count One conspiracy charge, reasoning that a corporation lacks the capacity to conspire with a human actor, but must instead act through its human agent, which has not been identified in the Indictment. GBS Co. claims a right to know which corporate agent or agents are accused of conspiring with La Forgia in the enumerated respects, yet the Indictment says nothing on the subject. Second, GBS Co. maintains that Counts Two and Four are insufficient because they "fail to specify which entries or omissions in the ORB were false." (Doc. 82, at 4-5.)

## II.     Analysis.

"When analyzing challenges to the sufficiency of an indictment, courts give the indictment a common sense construction, and its validity is to be determined by practical, not technical, considerations." *United States v. Poirier*, 321 F.3d 1024, 1029 (11th Cir. 2003) (citations omitted). The Federal Rules of Criminal Procedure provide that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Rule 7(c)(2), Fed.R.Crim.P. "By now, it is axiomatic that an indictment is sufficient if it (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Woodruff*, 296 F.3d 1041, 1046 (11th Cir. 2002) (citations and internal quotation marks omitted). "These factors ensure the provision of constitutional notice and due process. … Ultimately, the appropriate test … is not whether the indictment might have been drafted with more clarity, but whether it conforms to minimal constitutional standards." *United States v. McGarity*, 669 F.3d 1218, 1235-36 (11th Cir. 2012) (citations omitted). "The sufficiency of a criminal indictment is determined from its face." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (citations omitted).

### A.     *Failure to Identify Corporate Agents Alleged to be Co-Conspirators and to Have Committed Unlawful Acts.*

The first category of sufficiency arguments articulated in the Motion relates to the Indictment's failure to identify which corporate agents are alleged to have engaged in the

-3-

underlying acts and omissions. This theory may be disaggregated into a pair of related sub-arguments articulated by GBS Co., as follows: (i) when an indictment proceeds on a theory of vicarious liability as to a corporate defendant, the indictment must specify the names of the individuals for whose conduct vicarious liability is sought to be imposed; and (ii) the conspiracy charge at Count One fails because it does not identify at least two human actors, and there could be no conspiracy unless La Forgia reached agreement with another natural person, not GBS Co. These contentions are not well-grounded, either in law or in the text of the Indictment itself.

In defendant's own words, the vicarious liability argument is that "[w]hen a defendant is charged vicariously for the acts of other individuals, the identity of these individuals is a material fact that should be disclosed to the corporate defendant." (Doc. 82, at 4.) Material? Sure. But that's not the question. Essential to notify GBS Co. of the charges against it? No. Persuasive authorities stand for the proposition that an indictment need contain no such identification for vicarious liability purposes. *See, e.g., United States v. Van Allen*, 28 F.R.D. 329, 345 (S.D.N.Y. 1961) ("Where an indictment charges a corporation with an offense, it need not indicate for whose acts the corporation is being charged …."); *United States v. Detroit Steel Metal & Roofing Contractors Ass'n*, 116 F. Supp. 81, 91 (E.D. Mich. 1953) ("Where the indictment charges the corporation with an offense, it need not indicate the parties for whose acts the corporation is being charged. Where such names are needed by defendants to enable them to prepare for trial they can be obtained through the appropriate discovery procedure."). By contrast, GBS Co. has identified not a single instance in which an indictment has been dismissed on sufficiency grounds for failure to identify the specific agent alleged to have been acting for a defendant corporation.[1]

---

[1] To be sure, GBS Co. purports to rely on *United States v. Karake*, 281 F. Supp.2d 302 (D.D.C. 2003). But the posture of that case was not a motion challenging sufficiency of the indictment; rather, it was a defense motion to compel discovery. *See id.* at 310. Nothing in *Karake* holds or even suggests support for the broad principle for which GBS Co. cites it (*i.e.*, that an indictment against a corporate defendant is constitutionally infirm unless it specifically identifies the agents for whose actions the corporate defendant is being charged vicariously). Far from announcing a blanket rule mandating identification of such individuals in an indictment, the *Karake* court merely opined that a defense discovery request seeking such information was "entirely a matter of the sound discretion of the court." *Id.* (citation omitted). Simply put, *Karake* is inapposite and unhelpful to defendant's Motion. The same goes for the other two cases cited in defendant's reply. *See United States v. Ramirez*, 54 F. Supp.2d 25, 30 (D.D.C. 1999) (bill of particulars context); *United States v. Trie*, 21 F. Supp.2d 7, 22 (D.D.C. 1998) (same). Defendant's suggestion in a parenthetical that *Trie* dealt with the sufficiency of an
(Continued)

GBS Co.'s other variation on the failure-to-identify-the-corporate-agent theme is directed specifically at the conspiracy charge. In particular, GBS Co. balks that "Count One is plainly insufficient as it fails to identify any other human agent or employee who is alleged to have conspired with Defendant La Forgia." (Doc. 82, at 8.) This argument is unavailing. For starters, "[a]n indictment for conspiracy to commit a criminal offense is not required to be as specific as a substantive count." *United States v. Cole*, 755 F.2d 748, 759 (11th Cir. 1985). More importantly, as a matter of black-letter law, an indictment need not name all members of a conspiracy in order to satisfy minimum constitutional guarantees. *See, e.g., United States v. Nason*, 9 F.3d 155, 159 (1st Cir. 1993) ("A defendant can be indicted and convicted even if the names of his co-conspirators are unknown, as long as the government presents evidence of an agreement between two or more persons."); *United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991) ("It is the grand jury's statement of the existence of the conspiracy agreement rather than the identity of those who agree which places the defendant on notice of the charge he must be prepared to meet.") (citation omitted).[2] In light of these authorities, GBS Co.'s insistence (without citing to a single authority) that "[a]s a fundamental due process right, GBSC is entitled to know which individuals were identified by the prosecutors to the Grand Jurors as unnamed co-conspirators"

---

indictment is incorrect, as review of *Trie* unequivocally shows that it concerned a defense request for a bill of particulars, <u>not</u> a challenge to the indictment's sufficiency. Of course, the legal standard for a motion for bill of particulars differs significantly from that for a motion to dismiss an indictment as insufficient to comport with minimum constitutional guarantees. Defendant's Motion proceeds from a failure to distinguish between these divergent standards, instead conflating the helpfulness of certain information to prepare a defense at trial with the baseline requirement that an indictment notify the defendant of the charges.

[2] *See also United States v. Abdi*, 498 F. Supp.2d 1048, 1056 (S.D. Ohio 2007) ("an allegation of conspiracy need not be dismissed for failing to identify specific co-conspirators"); *United States v. Breeden*, 2004 WL 1920981, *3 (W.D. Va. Aug. 27, 2004) ("Breeden is not entitled to know the names of all persons the government believes are co-conspirators, unless this information is *essential* to effective preparation."); *United States v. Medina*, 2001 WL 869565, *4 (E.D. Penn. July 30, 2001) (rejecting argument that indictment was deficient where it did not contain identity of a co-conspirator); *United States v. Jackson*, 876 F. Supp. 1188, 1202 (D. Kan. 1994) ("Of some significance, is the absence of any rule that an indictment name all co-conspirators."); *United States v. Robinson*, 1991 WL 235724, *2 (E.D. La. Nov. 5, 1991) ("it is a well settled proposition that a defendant may be charged with and convicted of conspiracy without the presence of the names or identities of the co-conspirators in the indictment").

(doc. 82, at 10) rings hollow, and is not a correct statement of the law, at least with respect to the contents of the Indictment.

In a related vein, defendant contends that, in the absence of a second human actor, the Indictment improperly charges a conspiracy between one person and a company, not between two or more natural persons. It is true that a conspiracy requires at least two natural persons, and that a corporate agent cannot unlawfully conspire with the company whose agent he is. *See, e.g., United States v. Stevens*, 909 F.2d 431, 433 (11th Cir. 1990) ("The threat posed to society by these combinations arises from the creative interaction of two autonomous minds. It is for this reason that the essence of a conspiracy is an *agreement*."). But GBS Co. misapplies this doctrine. Unlike in *Stevens*, Count One of the Indictment does not charge a conspiracy based on a fact pattern in which "one human simply uses the corporate mechanism to carry out his crime" or in which "there is only one human actor, acting for himself and for the corporate entity which he controls." *Stevens*, 909 F.2d at 433. This is not a case in which La Forgia is charged with being the only human actor, conspiring with himself in his personal capacity and on behalf of GBS Co. To the contrary, the Indictment is perfectly clear that the conspiracy was between La Forgia and "GBS Co., ***acting through its agents and employees,*** who were acting within the scope of their agency and employment, and for the intended benefit, at least in part, of Defendant GBS Co." (Doc. 43, ¶ 12 (emphasis added).)[3] As charged, then, Count One involves multiple human actors. Not all of those human actors were named; however, for the reasons already stated, it was not necessary for the Indictment specifically to identify each corporate agent by name. By relying on *Stevens*, defendant seeks dismissal on a theory that has no application to the particular circumstances of this Indictment in this case.[4]

---

[3] In light of this passage, defendant's argument that "[n]o other human agent or employee is alleged to have conspired with Defendant La Forgia" (doc. 111, at 5) is both counterfactual and unhelpful. The Indictment plainly alleges that another human agent conspired with La Forgia, even though it does not (and need not) identify that person by name.

[4] Similarly unpersuasive is GBS Co.'s objection that "Count One as currently charged would allow the jury to convict GBSC under 18 U.S.C. § 371 based potentially on a flawed belief that Defendant La Forgia could conspire with GBSC alone and no other human actors." (Doc. 82, at 10.) The plain text of the Indictment is to the contrary. And any lingering ambiguity on that front could be readily dispatched via an appropriate, routine jury instruction clarifying that a conspiracy requires an agreement between two or more natural persons.

One other point bears mentioning. As discussed *supra*, the Eleventh Circuit has cautioned lower courts that the sufficiency of an indictment is a "common sense" inquiry that is governed by "practical, not technical, considerations." *Poirier*, 321 F.3d at 1029. A practical, common-sense examination of the Indictment shows that this not a case where a corporate defendant confronts a virtually impossible task in identifying its corporate agent(s) who is or are alleged to have entered the unlawful agreement with La Forgia. This is not a case where the purported corporate agent could be one of hundreds of people, and the corporate defendant is helpless to ascertain who it is. The 14 overt acts enumerated in Count One are tightly focused on engine room activities aboard the Vessel during a discrete time period spanning from December 19, 2011 through January 25, 2012. Given those narrow facts, GBS Co.'s broadside objection that it cannot possibly prepare a defense unless the Indictment specifies the alleged corporate agents does not pass muster under a common-sense, practical inquiry.

### B.     *Failure to Identify Specific ORB Entries Alleged to Be False.*

GBS Co. also contends that Counts Two and Four of the Indictment are insufficient. Recall that Count Two charges GBS Co. with obstructing justice by making false entries in the Vessel's ORB by failing to record overboard discharge of machinery space waste, while Count Four charges GBS Co. with knowing failure to maintain an accurate ORB for the Vessel. In defendant's view, the Indictment is insufficient as to these counts because it "fail[s] to specify which entries or omissions in the ORB were false." (Doc. 82, at 4-5.)

The law does not require that an indictment set forth in detail the facts underlying specific charges. Indeed, the Eleventh Circuit has explained that "[i]t is not necessary for an indictment … to allege in detail the factual proof that will be relied upon to support the charges." *Sharpe*, 438 F.3d at 1263 n.3 (citation omitted); *see also United States v. Hoover*, 467 F.3d 496 (5th Cir. 2006) ("Although the indictment must allege the essential elements of the charged offense, it is not necessary for an indictment to go further and to allege in detail the factual proof that will be relied upon to support the charges.") (citations and internal quotation marks omitted); *United States v. Agostino*, 132 F.3d 1183, 1189 (7th Cir. 1997) ("Indictments need not exhaustively recount the facts surrounding the crime's commission."); *United States v. Coffey*, 361 F. Supp.2d 102, 111 (E.D.N.Y. 2005) ("Generally, the indictment does not have to specify evidence or details of how the offense was committed.") (citations omitted).

What is required is that the Indictment contain "such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *United States v. Schmitz*, 634 F.3d 1247, 1261 (11th Cir. 2011). The Indictment does that. It specifically alleges that (i) the Vessel's ORB contained false entries when it was presented to the U.S. Coast Guard in Mobile, Alabama on January 24, 2012; (ii) the falsified entries were for a date range of December 19, 2011 through January 25, 2012; (iii) the nature of the falsification was the failure to record overboard discharges of bilge water without using pollution prevention equipment and the failure to record internal transfers of oily waste from machinery spaces to other areas in the ship; and (iv) these offenses were committed by La Forgia and agents or employees of GBS Co. What's more, the conspiracy count provides further insights into the nature of the violations in Counts Two and Four by listing as "overt acts" no fewer than six specific dates (all between December 19, 2011 and January 25, 2012) when the ORB was falsified in specifically enumerated ways. Viewing the Indictment as a whole, with the pragmatic, common-sense construction required by the Eleventh Circuit, the Court readily concludes that the Indictment contains a sufficient statement of the facts and circumstances to apprise GBS Co. of the specific charges against which it must defend.

### III.    Conclusion.

For all of the foregoing reasons, the Indictment is sufficiently detailed and specific to provide constitutional notice and due process to GBS Co. At its core, an indictment is sufficient if it "contain[s] the elements of the offense intended to be charged, and sufficiently apprise[s] the defendant of what he must be prepared to meet." *Sharpe*, 438 F.3d at 1263 (citations omitted). Here, the Indictment plainly contains the requisite elements, and when viewed in a common-sense construction, sufficiently apprises GBS Co. of what it must be prepared to meet. Nothing further is required. Accordingly, defendant GBS Co.'s Motion to Dismiss Indictment for Insufficiency (doc. 82) is **denied**.

DONE and ORDERED this 23rd day of May, 2012.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE